UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ANA LAVENANT, et al., | Case No. EDCV 17-2267-KK |
|---|---|
| Plaintiff(s), | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND |
| CITY OF PALM SPRINGS, et al., | |
| Defendant(s). | |

## I.

## **INTRODUCTION**

Plaintiffs Ana Lavenant and Jose Ortiz ("Plaintiffs"), individually and as successors-in-interest of their son Abraham Ortiz, filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983") and California law against defendants City of Palm Springs ("Defendant Palm Springs"), Officers David Etchason and Michael Heron ("Defendant Officers"), and unnamed Does (collectively, "Defendants"). Defendants filed a Motion to Dismiss ("Motion"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Defendants' Motion is GRANTED IN PART and DENIED IN PART with leave to amend.

## II.
## **PROCEDURAL HISTORY**

On November 6, 2017, Plaintiffs filed a Complaint pursuant to Section 1983. Dkt. 1. Plaintiffs' claims arise out of an officer-involved shooting on November 4, 2016, resulting in the death of 26-year-old Abraham Ortiz. Id.

On May 8, 2018, Plaintiffs on their own accord filed the operative First Amended Complaint. Dkt. 30, FAC. The FAC sues Defendant Palm Springs pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658 (1978) and Defendant Officers in both their individual and official capacities for the following:

1. First Cause of Action: Defendants violated civil rights by unreasonably using deadly force, which Plaintiffs bring in their capacity as successors-in-interest to Abraham Ortiz;
2. Second Cause of Action: Defendants violated civil rights by interfering with Plaintiffs' parent-child relationship, which Plaintiffs bring in their individual capacities;
3. Third Cause of Action: Defendant Palm Springs discriminated on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), which Plaintiffs bring in their capacity as successors-in-interest to Abraham Ortiz;
4. Fourth Cause of Action: Defendants committed a wrongful death, which Plaintiffs bring in their individual capacities;
5. Fifth Cause of Action: Defendants violated California's Bane Act, which Plaintiffs bring in their capacity as successors-in-interest to Abraham Ortiz;
6. Sixth Cause of Action: Defendants Etchason and Palm Springs committed battery, which Plaintiffs bring in their capacity as successors-in-interest to Abraham Ortiz; and

  7. Seventh Cause of Action: Defendants were negligent, which Plaintiffs bring in their capacity as successors-in-interest to Abraham Ortiz.

FAC at 7-15.

  On June 8, 2018, Defendants filed the instant Motion to Dismiss the FAC arguing:

1. Plaintiffs' First and Second Causes of Action against Defendant Palm Springs for "'municipal liability' fail to state a claim upon which relief can be granted, as they contain only legal conclusions and are devoid of sufficient facts";
2. Plaintiffs' Third Cause of Action against Defendant Palm Springs for violation of the ADA "fails to state a claim upon which relief can be granted, as it contains only legal conclusions and is devoid of sufficient facts";
3. Plaintiffs' Fourth, Sixth, and Seventh Causes of Action for violations of California law "fail to state claims upon which relief can be granted against Officers Etchason and Heron, as Plaintiffs fail to plead a statutory basis authorizing suit against the public employees";
4. Plaintiffs' Seventh Cause of Action "fails to state a claim upon which relief can be granted on behalf of Plaintiffs as individuals, as Plaintiffs have failed to sufficiently plead any 'duty' owed to them by any defendant";
5. Plaintiffs' Seventh Cause of Action "fails to state a claim upon which relief can be granted as against City of Palm Springs, as there is no state statute that sets forth a duty of care with respect to hiring, training, retention, supervision, or discipline of police officers";
6. Under Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), Plaintiffs' allegations they are suing Defendant Officers in their official capacity

3

"must be stricken as redundant, immaterial, and impertinent given Plaintiffs' concurrent attempts to sue the City of Palm Springs";

7. Under Rule 12(f), Plaintiffs' references to the Fourteenth Amendment in their First Cause of Action "must be stricken as immaterial and impertinent given their claim for 'excessive force' as successors-in-interest to Abraham Ortiz is grounded in the Fourth Amendment, and the Fourteenth Amendment's substantive due process provisions do not apply"; and

8. Under Rule 12(f), Plaintiffs' allegations in their Fourth Cause of Action for wrongful death "that the City of Palm Springs is 'directly liable because of its failure to properly train and supervise the Defendant Officers . . .' (FAC ¶ 49) must be stricken as immaterial and impertinent given California law does not support a direct liability" theory against a municipality for "'failure to train and supervise' police officers."

MTD at 1-3. On June 29, 2018, Plaintiffs filed an Opposition. Dkt. 23. On July 12, 2018, Defendants filed a Reply. Dkt. 33. The matter thus stands submitted.

### III.
### **ALLEGATIONS IN THE FAC**

According to the FAC, on November 4, 2016, at approximately 1:00 p.m., Defendant Officers and a Community Service Officer responding to 911 calls arrived in the parking lot of a Rite Aid in Palm Springs. FAC ¶ 4. "Callers reported that a man, later identified as Mr. [Abraham] Ortiz, was behaving erratically." Id. Defendant Officers "should have known" Abraham Ortiz was suffering from a "mental disability and/or was having a mental health crisis" because of the "911 reports that he was behaving erratically and strangely and from their interactions with and observations of him." Id. ¶ 17.

Initially, Abraham Ortiz "complied with officers' commands" and indicated he "had a screwdriver on his person as he was a mechanic." FAC ¶ 18. After a pat

4

down search, the officers retrieved the screwdriver and confirmed that Abraham Ortiz was not otherwise armed. Id. He then complied with further commands and sat down on the curb. Id.

"At this point, the officers unnecessarily escalated a situation involving a clearly mentally disabled suspect." FAC ¶ 19. "Defendant Officers acted unreasonably and contrary to proper training on dealing with mentally disturbed persons – insisting that Mr. Ortiz remove his jacket (which they had already searched) and then attempting to handcuff him – thereby escalating the situation so that a physical struggle with Mr. Ortiz ensued." Id. "Officer Etchason alleged Mr. Ortiz grabbed Officer Etchason's leg and pulled on his double retention holster." Id. ¶ 20. Abraham Ortiz "would not have been able to access the weapon from pulling down on the holster alone; rather, a double retention holster additionally requires the release of a hood, back strap, or other lever to safely release the gun from the holster." Id. "Contrary to proper training," Officer Etchason then unholstered his weapon and, "without warning," proceeded to shoot Abraham Ortiz in the stomach, "even though Etchason had control of his weapon." Id. "Mr. Ortiz did not pose an immediate threat of death or serious injury to anyone at the time of the shooting." Id. During the incident, "Officer Heron acted unreasonably in his encounter and arrest of Mr. Ortiz and failed to take steps to prevent the unnecessary use of deadly force by his fellow officer." Id. ¶ 21.

Though Abraham Ortiz was "initially alive and breathing after he was shot, he eventually died as a result of the gun shots." FAC ¶ 22.

Plaintiffs claim "[b]ased upon the principles set forth in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), Defendant City of Palm Springs is liable for all injuries sustained by Plaintiffs". FAC ¶ 23. Plaintiffs add Defendant Palm Springs "bears liability because its policies, practices and/or custom[s] were a cause of Mr. Ortiz's death and Plaintiffs' injuries." Id.
///

5

# IV.
# STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

///
///
///
///
///
///

# V.

# DISCUSSION

## A. PLAINTIFFS SUFFICIENTLY ALLEGE CLAIMS UNDER MONELL AGAINST DEFENDANTS IN THE FIRST AND SECOND CAUSES OF ACTION

### 1. Applicable Law

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166.

Because no respondeat superior liability exists under Section 1983, a state actor is liable only for injuries that arise from an official policy or longstanding custom. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); see also City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ("A municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" (citing Polk Cty. v. Dodson, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981))). A plaintiff must allege facts to establish "that a [state] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the "standard operating procedure of the local governmental entity."'" Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992); see also Ziegler v. Indian River Cty., 64 F.3d 470, 474 (9th Cir. 1995) (noting entity "not liable for acts of [state] officials unless the officials' conduct was the consequence of [state] policy or custom").

Proof of random acts or isolated events is insufficient to establish a custom or practice. Thompson v. City of L.A., 885 F.2d 1439, 1444 (9th Cir. 1989).

Rather, a plaintiff must prove widespread, systematic constitutional violations which have become the force of law. Board of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). A plaintiff must allege the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citing Arnold v. Int'l Bus. Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981)).

Additionally, a municipality may be held liable for a constitutional violation if it inadequately trains its employees. City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1988). Under a deficient training theory, a municipality may be held liable where the continued "adherence by policymakers 'to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." Long v. Cty. of L.A., 442 F.3d 1178, 1186 (9th Cir. 2006) (citing Board of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407). Moreover, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incidence, is the 'moving force' behind the plaintiff's injury." Board of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407-08. Alternatively, a plaintiff may prove a failure-to-train claim without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. at 409.

Lastly, "[a] municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." Lytle v. Carl, 382 F.3d 978, 986 (9th Cir. 2004) (citing Christie v. Iopa, 176 F.3d 1231, 1238 (9th Cir. 1999)). To show ratification, a plaintiff must demonstrate that the "authorized policymakers

approved a subordinate's decision and the basis for it." Christie, 176 F.3d at 1239 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)).  Statements made in public by authorized policymakers about a subordinate's decision may "be used as evidence on the issue of [] liability . . . of the [municipality]." Larez v. City of Los Angeles, 946 F.2d 630, 645 (9th Cir. 1991) ("To the extent the opinions of Chief Gates shed light on the operation, custom, or policy of his department, or on his ratification or condonation of the injurious acts, his statements, if admitted upon retrial, may, of course, be used as evidence on the issue of his liability and that of the City.").

**2. Analysis**

Here, Plaintiffs have alleged sufficient facts to state claims under deficient training and ratification theories of municipal liability under Monell for their First and Second Causes of Action. Iqbal, 556 U.S. at 678.

Under a deficient training theory of municipal liability, Plaintiffs have sufficiently identified a practice with respect to identifying and dealing with individuals displaying signs of mental illness. Specifically, Plaintiffs allege Defendant Palm Springs failed "to provide adequate training and supervision to police officers with respect to constitutional limits on use of force, arrest, search, and detention; particularly, but not exclusively when interacting with citizens clearly displaying signs of mental episode, mental disability, mental illness and/or mental instability". FAC ¶ 23(b). Moreover, Plaintiffs allege sufficient facts to state a claim that this official policy was the "moving force" behind the constitutional violation by pointing to two past incidents in the City of Palm Springs concerning officer-involved shootings which should have (1) "placed the City of Palm Springs on notice that its training on the use of deadly force encouraged officers to act aggressively and to escalate situations to the point of deadly force" and (2) indicated "that police officers were not properly trained on when to fire their weapons." Id. ¶¶ 23(h)-(i); see Mood v. City of Costa Mesa, No.

SACV 15-1154-SVW-KK, 2016 WL 6902109, at *5 (C.D. Cal. June 2, 2016), report and recommendation adopted, No. SACV 15-1154-SVW-KK, 2016 WL 6905930 (C.D. Cal. Nov. 22, 2016) (observing that two previous instances of alleged misconduct constituted sufficient facts for a Monell claim to survive a Rule 12(b)(6) motion). Additionally, even without showing a pattern of constitutional violations, the Court finds a violation of federal rights is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations" involving mentally ill individuals they will encounter and arrest. See Board of Cty. Comm'rs of Bryan Cty., 520 U.S. at 409. As such, Plaintiffs have alleged sufficient facts to state a claim under a deficient training theory of municipal liability.

Moreover, under a ratification theory of municipal liability, Plaintiffs identify public statements made by an alleged authorized policymaker about the decisions made in the shooting of Abraham Ortiz. FAC at 6; Dkt. 32 at 4; see Larez, 946 F.2d at 645. Specifically, Plaintiffs allege a captain and member of the command staff of the Palm Springs Police Department (dkt. 32 at 4 n.2), "publicly stated . . . that [the Police Department] 'concur[red] with the[] finding' of the Riverside District Attorney that . . . Officer Etchason did not act excessively in shooting Abraham Ortiz, thereby ratifying that his use of force was pursuant to Palm Springs' official custom, policies and practice". FAC ¶ 23(g) (alterations in original). These statements by the alleged authorized policymaker are sufficient to assert Defendant Palm Springs ratified the alleged policy encouraging the use of deadly force. See Larez, 946 F.2d at 645. Thus, Plaintiffs have alleged sufficient facts to state a claim under a ratification theory of municipal liability.

///
///
///
///

10

## B. PLAINTIFFS SUFFICIENTLY ALLEGE A CLAIM OF DISCRIMINATION UNDER THE ADA AGAINST DEFENDANT PALM SPRINGS IN THE THIRD CAUSE OF ACTION

### 1. Applicable Law

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, "a plaintiff generally must show: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability." Sheehan v. City and Cty. of S.F., 743 F.3d 1211, 1232 (9th Cir. 2014), reversed in part on other grounds, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015).

ADA protections apply during arrests. Id. at 1217. A viable ADA claim may be brought "where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." Sheehan, 743 F.3d at 1232; see Gohier v. Enright, 186 F.3d 1216, 1220-21 (10th Cir. 1999). In the context of mental health, courts have recognized viable ADA claims where an officer fails to reasonably accommodate plaintiff's disability or fails to "employ[] generally accepted police practices for peaceably resolving a confrontation with a person with mental illness." Sheehan, 743 F.3d at 1232; see also Vos v. City of Newport Beach, 892 F.3d 1024, 1037 (9th Cir. 2018) (finding viable claims under the ADA where "the officers [] had the time and the opportunity to assess the situation and potentially employ the accommodations

11

identified by the Parents, including de-escalation, communication, or specialized help").

To support a claim for compensatory damages under the ADA, a plaintiff must show the defendant acted with "discriminatory intent," i.e. that the defendant acted with "deliberate indifference." Ferguson v. City of Pheonix, 157 F.3d 668, 674 (9th Cir. 1998); Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that [] likelihood." Duvall, 260 F.3d at 1139; see City of Canton, 489 U.S. at 389.

**2.   Analysis**

Here, Plaintiffs have alleged sufficient facts to state a claim of discrimination under the ADA. Iqbal, 556 U.S. at 678.

First, Plaintiffs have alleged sufficient facts showing Abraham Ortiz was "an individual with a disability" and "qualified to participate in or receive the benefit of a public entity's services, programs or activities." See Sheehan, 743 F.3d at 1232. Plaintiffs specifically point out that Abraham Ortiz was diagnosed as schizophrenic and was "working with a social worker to apply for disability and seek medical treatment for his condition." FAC ¶ 7. Second, Plaintiffs have alleged sufficient facts demonstrating Abraham Ortiz was "discriminated against by the public entity" and "such exclusion, denial of benefits or discrimination was by reason of [his] disability." See Sheehan, 743 F.3d at 1232. Indeed, Plaintiffs point out that Defendants "discriminated against Mr. Ortiz by, among other things, their failure to provide reasonable accommodations for his disability during their encounter and arrest of Mr. Ortiz on November 3, 2016" by failing to utilize protocols "specifically created to inform officers how to handle encounters with mentally-ill persons." FAC ¶¶ 41, 43. Plaintiffs add that Defendant Officers "knew or should have known Mr. Ortiz was experiencing a mental health crisis" and yet "decided to engage with Mr. Ortiz, further exacerbating his mental health crisis and creating an

unnecessary altercation with Mr. Ortiz." Id. ¶ 43. Consequently, consistent with other courts' holdings, this Court finds Plaintiffs identify sufficient facts for their discrimination claim under the ADA. See Sheehan, 743 F.3d at 1232; Gohier, 186 F.3d at 1220-21.

Second, Defendants' argument that under California law Plaintiffs' damages are limited to damages Abraham Ortiz would have been able to recover is incorrect. State laws limiting damages of successors-in-interest cannot preempt the damages available to Plaintiffs under 29 U.S.C. § 794a and the ADA, 42 U.S.C. § 12133. See Hillsborough Cty., Fla. V. Automated Med. Labs., Inc., 471 U.S. 707, 712, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (holding the Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law") (citing Gibbons v. Ogden, 9 Wheat. 1, 211, 6 L. Ed. 23 (1824)); Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (holding California law limiting the availability of pre-death pain and suffering damages cannot limit damages available in a Section 1983 claim).

Under the ADA, Plaintiffs have demonstrated sufficient facts to state a claim for compensatory damages because they set forth sufficient facts of Defendants' "deliberate indifference." See Duvall, 260 F.3d at 1139. Plaintiffs allege Defendants had knowledge "that a harm to a federally protected right [was] substantially likely" and "failed to act upon that [] likelihood." See Duvall, 260 F.3d at 1139. Plaintiffs assert that Defendant Officers "knew or should have known" about Abraham Ortiz's "mental health crisis" and yet decided to "exacerbate[e]" the crisis by "creating an unnecessary altercation". FAC ¶ 43. Likewise, Plaintiffs assert Defendant Palm Springs failed to "train, supervise, and/or discipline Officers of the Palm Springs Police Department in recognizing symptoms of disability" under the ADA, which resulted "in the untimely death of Mr. Ortiz." Id. ¶ 42. Plaintiffs thus allege sufficient facts to state a claim for compensatory damages.

13

## C. PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE CLAIMS FOR RELIEF IN THE FOURTH, SIXTH, AND SEVENTH CAUSES OF ACTION UNDER CALIFORNIA LAW

### 1. Applicable Law

A governmental entity can only be sued in tort under California law pursuant to an authorizing statute or enactment. Van Ort v. Estate of Stanewich, 92 F.3d 831, 840 (9th Cir. 1996) (citing Searcy v. Hemet Unified School Dist., 177 Cal. App. 3d 792, 798 (1986)). "To state a cause of action [for government tort liability] every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty." Searcy, 177 Cal. App. 3d at 802. "Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." Id.

"A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2. "[T]he general rule is that an employee of a public entity is liable for his torts to the same extent as a private person ([Cal. Gov. Code] § 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (([Cal. Gov. Code] § 815.2, subd. (a)) to the same extent as a private employer ([Cal. Gov. Code] § 815, subd. (b))." C.A. v. William S. Hart Union School Dist., 53 Cal. 4th 861, 868 (2012) (internal citations omitted). However, for a wrongful death or negligence claim, no California statute sets forth a city's direct liability because of improper training, procedure, or supervision of officers. Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1113 (2004); Jaramillo v. City of San Mateo, 76 F. Supp. 3d 905, 927 (N.D. Cal. 2014) (citing to Munoz, 120 Cal. App. 4th at 1110-15). Nevertheless, a city may be liable in a wrongful death action against police officers and the city under a vicarious

14

liability theory.  <u>Munoz</u>, 120 Cal. App. 4th at 1110; <u>see</u> Cal. Gov. Code § 815.2, subd. (a).

**2. Analysis**

Here, Plaintiffs have not sufficiently alleged facts to support their fourth cause of action (wrongful death), sixth cause of action (battery), and seventh cause of action (negligence) under California law.

First, Plaintiffs sue Defendant Officers in the Fourth, Sixth, and Seventh Causes of Action but mistakenly fail to cite to an appropriate statute or enactment authorizing suit against Defendant Officers.  <u>Van Ort</u>, 92 F.3d at 840.  Indeed, Plaintiffs admit they made a typo in their FAC, citing to California Government Code "§ 920" instead of § 820.  Dkt. 32 at 13.  Thus, the Court dismisses Plaintiffs' Fourth, Sixth, and Seventh Causes of Actions against Defendant Officers with leave to amend.

Second, Plaintiffs sue Defendant Palm Springs in their Fourth Cause of Action under both vicarious and direct theories of liability.  FAC ¶ 49.  Although Plaintiffs' appropriately point to a statutory basis for the city's vicarious liability under California Government Code § 815.2, Plaintiffs have failed to point to a California statute to support the city's direct liability for the Fourth Cause of Action.  <u>See</u> <u>Munoz</u>, 120 Cal. App. 4th at 1113.  The Court thus dismisses Plaintiffs' Fourth Cause of Action against Defendant Palm Springs with leave to amend.

Lastly, Plaintiffs sue Defendant Palm Springs in their Seventh Cause of Action for negligence stating Defendant Palm Springs violated its duty of care because it "fail[ed] to properly train, supervise and discipline employees" and (2) "negligent[ly] hir[ed], ret[ained] and assign[ed] [] its employees."  FAC ¶ 63.  Plaintiffs, however, fail to allege a California statute setting forth a city's duty of care with respect to supervision, training, and discipline of its employees.  <u>See</u>

Jaramillo, 76 F. Supp. 3d at 927. As such, the Court dismisses Plaintiffs' Seventh Cause of Action against Defendant Palm Springs with leave to amend.

### D. DEFENDANTS' REQUESTS TO STRIKE ALLEGATIONS IN THE FAC IS DENIED

#### 1. Applicable Law

"Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted because they are often used to delay and because of the limited importance of the pleadings in federal practice." Wynes v. Kaiser Permanente Hosps., No. 2:10-CV-00702-MCE, 2011 WL 1302916, at *12 (E.D. Cal. Mar. 31, 2011). Accordingly, "courts in this jurisdiction generally deny motions to strike when . . . the moving party fails to show prejudice." Mary Pickford Found. v. Timeline Films, LLC, No. CV-12-6070-PSG (DTBx), 2013 WL 12131550, at *2 (C.D. Cal. Jan. 11, 2013) (denying motion to strike for failure to show unfair prejudice).

#### 2. Analysis

Here, Defendants seek to strike "'redundant,' 'immaterial,' or 'impertinent'" use of "official capacity allegations" against Defendant Officers and references to the Fourteenth Amendment in the FAC. Defendants, however, have not alleged any prejudice that would result from a failure to strike. Hence, Defendant's Motion to Strike is denied.

## VI.
## ORDER

IT IS THEREFORE ORDERED Defendants' Motion is GRANTED IN PART as it pertains to the FAC's Fourth, Sixth, and Seventh Causes of Action, and DENIED IN PART as to Defendants' remaining arguments in their Motion. Hence, the following claims are dismissed with leave to amend:

- Fourth, Sixth, and Seventh Causes of Actions against Defendant Officers;
- Fourth Cause of Action against Defendant Palm Springs; and
- Seventh Cause of Action against Defendant Palm Springs.

IT IS FURTHER ORDERED that Plaintiffs may file an amended complaint attempting to cure deficiencies set forth in this order **within twenty-one (21) days** of the service date of this Order. If Plaintiffs do not timely file an amended complaint, Defendants shall file an answer to the remaining claims in the FAC **within forty-five (45) days** of the service date of this Order.

Dated: August 08, 2018

HONORABLE KENLY KIYA KATO
United States Magistrate Judge